## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

———————————————————————
|  | : |  |
| HOUSTON SHUTTERS LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 24-00193 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
———————————————————————
|  | : |  |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Alan R. Klestadt
Jordan C. Kahn*

GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP

599 Lexington Avenue-36th Floor
New York, NY 10022
(212) 557-4400
**
*1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

March 12, 2025

# TABLE OF CONTENTS

BACKGROUND ...................................................................................................................... 1

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT ........................................................................................................................... 5

    I.    Jurisdiction Does Not Require That Plaintiff Challenged Commerce's Investigations ..... 5

    II.   Plaintiff's CCR Request Contained Extensive New Information Constituting A Changed Circumstance ......................................................................................................................... 9

    III.  Commerce Uses CCRs to Consider "New" Information That Was Not Provided During The Underlying Proceeding ................................................................................................... 13

    IV.  Should This Court Find That the Complaint Was Deficient in Terms of Establishing Jurisdiction, Plaintiff Requests Leave to Amend ..................................................................... 16

CONCLUSION ........................................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Almond Bros. Lumber Co. v. United States*,
    651 F.3d 1343 (Fed. Cir. 2011)....................................................................................4, 15

*Calgon Carbon Corp. v. United States*,
    145 F. Supp. 3d 1312 (CIT 2016)...............................................................................5, 7, 12

*Consolidated Bearings Co. v. United States*,
    348 F.3d 997 (Fed. Cir. 2003).....................................................................................5, 6, 7

*Goodluck India Limited v. United States*,
    605 F. Supp. 3d 1343 (CIT 2022)..........................................................................4, 5, 9, 12

*Greenfirst Forest Prods. Inc. v. United States*,
    604 F. Supp. 3d 1368, 1370 (CIT 2022)..............................................................................5

*Hartford Fire Ins. Co. v. United States*,
    544 F.3d 1289 (Fed. Cir. 2008).............................................................................................4

*Inspired Venture v. United States*,
    2024 WL 4616192 (Oct. 30, 2024)...................................................................................4, 8

*Itochu Bldg. Prods. v. United States*,
    733 F.3d 1140 (Fed. Cir. 2013), *on remand*, 2014 WL 1363999
     (CIT Apr. 8, 2014) ..............................................................................................................3

*National Nail Corp. v. United States*,
    335 F. Supp. 3d 1321 (CIT 2018)........................................................................................5

*Norcal/Crosetti Foods, Inc. v. United States*,
    963 F.2d 356 (Fed. Cir. 1992)...................................................................................5, 6, 7, 15

*Norsk Hydro Can., Inc. v. United States*,
    472 F.3d 1347 (Fed. Cir. 2006)........................................................................................6, 8

*Sunpreme Inc. v. United States*,
    892 F.3d 1186 (Fed. Cir. 2018)............................................................................................8

*Sunpreme Inc. v. United States*,
    946 F.3d 1300 (Fed. Cir. 2020)............................................................................................8

*Tak Fat Trading Co. v. United States*,
    24 CIT 1376 (2000) ..........................................................................................................12

*Tak Fat Trading Co. v. United States*,
   396 F.3d 1378 (Fed. Cir. 2005)................................................................................12

**Statutes**

28 U.S.C. § 1581............................................................................................... *passim*

28 U.S.C. § 2636....................................................................................................16

**Regulations**

19 C.F.R. § 351.305...............................................................................................1, 6

**Rules**

Court of International Trade Rule 8.......................................................................4, 9

Court of International Trade Rule 15................................................................16, 17

Federal Rules of Civil Procedure Rule 201 ......................................................5, 8, 12

**Administrative Decisions**

*Antidumping Duties*, 54 Fed. Reg. 12,742 (Mar. 28, 1989)........................................11

*Certain Hardwood Plywood Products from the People's Republic of China: Final
   Results of Changed Circumstances Reviews, and Revocation of the
   Antidumping and Countervailing Duty Orders in Part*, 86 Fed. Reg. 29,562
   (June 2, 2021)........................................................................................................3

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
   from the People's Republic of China: Notice of Initiation of Changed
   Circumstances Reviews, and Consideration of Revocation of the Antidumping
   and Countervailing Duty Orders, in Part*, 89 Fed. Reg. 84,114 (Oct. 21, 2024) .............14, 15

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
   from the People's Republic of China: Notice of Initiation of Changed
   Circumstances Reviews, and Consideration of Revocation of the Antidumping
   and Countervailing Duty Orders, in Part*, 88 Fed. Reg. 49,448 (July 31, 2023) ...................15

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
   from the People's Republic of China: Notice of Initiation of Changed
   Circumstances Reviews, and Consideration of Revocation of the Antidumping
   and Countervailing Duty Orders, in Part*, 88 Fed. Reg. 14,131 (Mar. 7, 2023) ...................15

*Oil Country Tubular Goods from the People's Republic of China: Final
   Affirmative Determinations of Circumvention*, 86 Fed. Reg. 67,443
   (Nov. 26, 2021)....................................................................................................13

*Oil Country Tubular Goods from the People's Republic of China: Final Results of Antidumping and Countervailing Duty Changed Circumstances Reviews,* 87 Fed. Reg. 15,915 (Mar. 21, 2022) ...................................................................13, 14

*Steel Wire Garment Hangers from the People's Republic of China: Final Results of Changed Circumstances Review, and Revocation in Part of Antidumping Duty Order,* 74 Fed. Reg. 50,956 (Oct. 2, 2009) ......................................................................2

*Wood Mouldings and Millwork Products from Brazil and the People's Republic of China: Initiation of Less-Than-Fair-Value Investigations,* 85 Fed. Reg. 6502 (Feb. 5, 2020) ......................................................................1, 2, 6

*Wood Mouldings and Millwork Products from the People's Republic of China: Initiation of Countervailing Duty Investigation,* 85 Fed. Reg. 6513 (Feb. 5, 2020) ..................................................................................................1, 2, 6

*Wood Mouldings and Millwork Products from the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order,* 86 Fed. Reg. 9486 (Feb. 16, 2021) ...................................................... *passim*

*Wood Mouldings and Millwork Products from the People's Republic of China: Countervailing Duty Order,* 86 Fed. Reg. 9484 (Feb. 16, 2021) .................................... *passim*

*Wood Mouldings and Millwork Products from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; Final Determination of No Shipments; and Partial Rescission; 2020–2022,* 88 Fed. Reg. at 62,539 (Sept. 12, 2023) .............................................................2, 7

## Other Authorities

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Rep 103-316, 1994 U.S.C.C.A.N. 4040 (Dec. 8, 1994) ......................16

H.R. Rep. 96-1235, 1980 U.S.C.C.A.N. 3729 (Aug. 20, 1980) ....................................16

MERRIAM-WEBSTER.COM...........................................................................................9, 10, 12

Plaintiff Houston Shutters LLC hereby responds to the Motion to Dismiss for Lack of Subject Matter Jurisdiction filed by Defendant United States on January 21, 2025, ECF 14 ("Def. Br."). For the reasons set forth below, this Court has jurisdiction over Plaintiff's challenge to the U.S. Department of Commerce's ("Commerce") refusal to initiate a changed circumstances review ("CCR") to exclude wood shutter components from the antidumping/countervailing duty ("AD/CVD") orders on wood mouldings and millwork products from the People's Republic of China ("China"). This Court should accordingly deny Defendant's Motion to Dismiss and proceed to consideration of the merits of Plaintiff's appeal.

## BACKGROUND

Commerce in February 2020 initiated AD/CVD investigations of wood mouldings and millwork products from China. *Wood Mouldings and Millwork Products from Brazil and China: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 6502 (Feb. 5, 2020); *Wood Mouldings and Millwork Products from China: Initiation of CVD Investigation*, 85 Fed. Reg. 6513 (Feb. 5, 2020) (collectively, the "*AD/CVD Initiations*"). Plaintiff did not participate in these investigations, Pl.Appx1-10,[1] which resulted in the February 2021 issuance of AD/CVD orders on wood mouldings from China. *Wood Mouldings and Millwork Products from China: Amended Final ADD Determination and Antidumping Duty Order*, 86 Fed. Reg. 9486 (Feb. 16, 2021); *Wood Mouldings and Millwork Products from China: CVD Order*, 86 Fed. Reg. 9484 (Feb. 16, 2021) (collectively, "*AD/CVD Orders*"). To have participated in these investigations, Plaintiff would have had to demonstrate that it entered subject merchandise during the 2019 period of investigation ("POI"). 19 C.F.R. § 351.305(d); *AD/CVD Initiations*, 85 Fed. Reg. at 6503, 6514.

---

[1]     Plaintiff provides its own Appendix ("Pl.Appx") appended hereto, to supplement that provided by Defendant appended to Def. Br. ("Appx").

In March 2020, early in the AD/CVD investigations, a scope exclusion for wood shutter components was requested by Lanzhou Xinyoulian Industrial Co., Ltd. ("Lanzhou"). Appx168-192. If accepted by Commerce and written into the *AD/CVD Orders*' scope, AD/CVD would have never applied to wood shutter components from China. *Id*. Commerce on June 11, 2020, responded by issuing a questionnaire to Lanzhou, specifically requesting that Lanzhou – and no other party – provide supplemental information for its requested exclusion within a single week, by June 18, 2020. Appx193. Lanzhou declined to respond, prompting Commerce to preliminarily find that wood shutter components were subject merchandise in August 2020, and thereafter issue *AD/CVD Orders* in February 2021 without an exclusion for wood shutter components. Appx228-231 ("Lanzhou . . . did not respond to the additional opportunity to provide comment, and thus the record lacks information demonstrating that wood shutter components are distinct from in-scope merchandise."); *AD/CVD Orders*, 86 Fed. Reg. at 9485, 9488-89.

Plaintiff subsequently imported wood shutter components from China. In an effort to minimize or eliminate AD/CVD liability, and allow for such imports to occur without AD/CVD going forward, Plaintiff on July 15, 2024, filed a 375-page CCR Request that included 16 videos. Appx521-562; Pl.Appx11-343.[2] Plaintiff requested not only that a new scope exclusion for wood shutter components be written into the *AD/CVD Orders*, but that it apply retroactively to any unliquidated entries as of June 12, 2020, for CVD and August 12, 2020, for ADD – when Commerce published its preliminary determinations in those investigations. Appx557-58. Commerce has in prior CCRs applied scope exclusions retroactively to unliquidated entries in this manner. Appx528, 557; *Steel Wire Garment Hangers from China: Final Results of CCR,*

---

[2]    Because Defendant only provided the CCR Request narrative, Appx521-62, Plaintiff is providing the remainder of that submission containing its exhibits. Pl.Appx11-343.

*and Revocation in Part of ADD Order*, 74 Fed. Reg. 50,956, 50,956 (Oct. 2, 2009); *Certain Hardwood Plywood Products from China: Final Results of CCRs, and Revocation of the ADD/CVD Orders in Part*, 86 Fed. Reg. 29,562, 29,564-65 (June 2, 2021); *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145-1148 (Fed. Cir. 2013), *on remand*, 2014 WL 1363999, *3-7 (CIT Apr. 8, 2014).

In its CCR Request, "Plaintiff provided the information that Commerce had previously requested from Lanzhou, and further demonstrated that the requested exclusion was readily administrable, not susceptible to circumvention and would not harm Petitioners." Complaint (Oct. 16, 2024), ECF 2, ¶ 10. Plaintiff's CCR Request included an extensive amount of new information specifically prepared for, and contemporaneously with, the CCR, including: 16 videos, Pl.Appx12; wood shutter component schematics, Appx537-41; Pl.Appx.11-12, 29-32, 240-49; and diagrams of domestically produced wood mouldings and millwork products. Pl.Appx34-47. Other information in the CCR that became available in the years since issuance of the *AD/CVD Orders* included:

- A letter of support from members of Congress dated July 3, 2024, Pl.Appx18;

- A declaration from an industry expert dated May 15, 2024, Pl.Appx20-23;

- B. Wolsey, *Why basswood is the best for your shutters*, THE BLINDMAN.COM (Aug. 23, 2023), Pl.Appx126-28;

- Yasmeen, *What Are Stiles on a Shutter?*, THESHUTTERSTORE.COM (Feb. 15, 2022), Pl.Appx147-52;

- K. Vollmar, *Parts of a Door: Front Door Anatomy 101*, PELLA (May 12, 2021), Pl.Appx182-88;

- L. Wallender, *Water-Based vs. Oil-Based Polyurethane Comparison Guide*, THESPRUCE (Mar. 22, 2024), Pl.Appx257-264;

- *Introducing Polyurethane Paints*, PRO MAIN (Feb. 23, 2022), Pl.Appx269-72;

- *A Guide To Architectural Millwork*, AWI QUALITY CERTIFICATION PROGRAM (Mar. 7, 2022), Pl.Appx296-300; and

- V. Jackson, *What is Saw Kerf and Why It Matters in Woodworking*, THE HANDYMAN'S DAUGHTER (Aug. 2, 2022), Pl.Appx323-43.

Commerce on August 15, 2024, declined to initiate a CCR. Appx563-564. Plaintiff on October 16, 2024, initiated this instant appeal in this Court asserting jurisdiction under 28 U.S.C. § 1581(i).[3] Summons (Oct. 16, 2024), ECF 1. In January 2025, Defendant moved to dismiss Plaintiff's appeal for lack of subject matter jurisdiction, arguing that jurisdiction does not lie under 28 U.S.C. § 1581(i) because Plaintiff's challenge could have been brought to Commerce's AD/CVD investigations under 28 U.S.C. § 1581(c). Def. Br. at 8-10.

## LEGAL STANDARD

"**Prevailing on a motion to dismiss based on a jurisdictional dispute presents a high bar**." *Inspired Venture v. United States*, 2024 WL 4616192, *3 (Oct. 30, 2024) (emphasis added). "If the party makes an allegation of fact that sufficiently invokes the subject matter jurisdiction of the Court of International Trade, then the party has satisfied the liberal pleading requirements of CIT Rule 8(a)(1), and a motion to dismiss is improper." *Goodluck India Limited v. United States*, 605 F. Supp. 3d 1343, 1346 n.2 (CIT 2022) (citing CIT Rule 8(a)).

The U.S. Court of Appeals for the Federal Circuit ("CAFC") repeatedly "has noted that in enacting 28 U.S.C. § 1581(i), **Congress granted the CIT broad residual jurisdiction** over matters relating to imports." *Almond Bros. Lumber Co. v. United States*, 651 F.3d 1343, 1351 (Fed. Cir. 2011) (emphasis added). The CAFC refers to 28 U.S.C. § 1581(i) as "a Congressional fail-safe device" and a "catch all provision." *Hartford Fire Ins. Co. v. United States*, 544 F.3d

---

[3]    Plaintiff out of an abundance of caution in September 2024 filed an appeal under 28 U.S.C. § 1581(c). *Houston Shutters LLC v. United States*, Court No. 24-175, Summons (Sept. 16, 2024), ECF 1; Complaint (Oct. 16, 2024), ECF 8.

1289, 1292 (Fed. Cir. 2008); *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359

(Fed. Cir. 1992). It "supplies jurisdiction only for instances when no other subsection of {28

U.S.C. § 1581} 'is or could have been available,' unless the other subsection provided no more

than a manifestly inadequate remedy." *Consolidated Bearings Co. v. United States*, 348 F.3d

997, 1002 (Fed. Cir. 2003) (quoting *Norcal/Crosetti*, 963 F.2d at 359). This Court has previously

used the 28 U.S.C. § 1581(i) statutory grant of residual jurisdiction to review Commerce's

refusal to initiate a CCR. *Greenfirst Forest Prods. Inc. v. United States*, 604 F. Supp. 3d 1368,

1370 (CIT 2022).

Where "the Government challenges the existence of jurisdiction, . . . the court may

consider extrinsic evidence." *National Nail Corp. v. United States*, 335 F. Supp. 3d 1321, 1325

(CIT 2018). This Court can and should take judicial notice of documents posted on Commerce's

ACCESS website. *See, e.g.*, *Calgon Carbon Corp. v. United States*, 145 F. Supp. 3d 1312, 1327

(CIT 2016). Such AD/CVD proceeding submissions, locatable on ACCESS using each

document's barcode,[4] are "generally known" and their filing "can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned." FRCP Rule 201.

## ARGUMENT

### I.    Jurisdiction Does Not Require That Plaintiff Challenged Commerce's Investigations

Defendant seeks to dismiss this appeal of Commerce's unwillingness to initiate its CCR

filed in 2024 by arguing that Plaintiff "could have challenged" Commerce's 2020-21 scope

determination in the investigations. Def. Br. at 8. As an initial matter, it is an incorrect non-

sequitur for Defendant to claim that as "an 'interested party'" Plaintiff "had the ability to

---

[4]    All appendix documents provided by Plaintiff and Defendant are locatable on ACCESS using barcodes, with the exception of the Petition Regarding Wood Molding Products (Jan. 8, 2020), Appx1-167 – which can be located on ACCESS using Barcode 3932758.

participate in the original investigation." Def. Br. at 9 (quoting Complaint ¶ 3). Plaintiff asserting

standing as an interested party to the CCR proceeding – that it requested by filing a CCR

Request in July 2024, having imported merchandise subject to AD/CVD – does not necessarily

mean that it had standing to participate in the underlying investigations. To do so, Plaintiff was

required to not only have imported subject merchandise during the 2019 POI, but also to have

provided evidence thereof to Commerce during the investigations. 19 C.F.R. § 351.305(d);

*AD/CVD Initiations*, 85 Fed. Reg. at 6503, 6514. Plaintiff did not participate in the

investigations, Pl.Appx1-10, and Defendant fails to establish that the requisite importation

occurred in 2019 or that the investigation record contains evidence thereof.

Assuming *arguendo* that Plaintiff was able to participate in the investigations, this Court

nonetheless possesses jurisdiction over this appeal because the "true nature of the action" is

seeking a retroactive exclusion for wood shutter components to be added to the existing *AD/CVD*

*Orders*. *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006). Seeking

to eliminate AD/CVD on merchandise that has already entered the United States is

fundamentally distinct from seeking to prevent AD/CVD from applying in the first instance. The

requested relief through Plaintiff's CCR – that a scope exclusion be written into previously

issued *AD/CVD Orders*, and that apply retroactively to unliquidated entries that would otherwise

be subject to AD/CVD – neither is nor "could have been available" under 28 U.S.C. § 1581(c).

*Consolidated Bearings*, 348 F.3d at 1002 (quoting *Norcal/Crosetti Foods*, 963 F.2d at 359).

Plaintiff's participation in the 2020-21 Commerce investigations and appeal of that scope

determination would not accomplish what Plaintiff is seeking to obtain in the CCR proceeding,

namely elimination of AD/CVD on entered merchandise through consideration of new

information provided from the intervening years. Section II, *supra*.

Moreover, assuming *arguendo* the relief currently requested was available in the AD/CVD investigations, Plaintiff challenging that 2020-21 scope determination under 19 U.S.C. § 1581(c) would "provide{} no more than a manifestly inadequate remedy." *Consolidated Bearings*, 348 F.3d at 1002 (quoting *Norcal/Crosetti Foods*, 963 F.2d at 359). This is because participation in the investigation and an appeal of an adverse scope determination would not change AD/CVD becoming applicable to wood shutter components following issuance of the *AD/CVD Orders*. Obtaining a scope exclusion *ab initio* in the investigations may have precluded AD/CVD in the first instance, but it is manifestly inadequate in terms of providing a basis to eliminate that liability. Notably, Plaintiff is only seeking to eliminate AD/CVD liability on unliquidated entries of wood shutter components from China, Appx556-58; entries since the *AD/CVD Orders* issued in February 2021 must have liquidated by now, given the conclusion of administrative reviews. *See, e.g., Wood Mouldings and Millwork Products from China: Final Results of ADD Administrative Review; Final Determination of No Shipments; and Partial Rescission; 2020–2022*, 88 Fed. Reg. at 62,539 (Sept. 12, 2023).

That the *AD/CVD Orders* have already issued, administrative reviews have been completed, and entries of wood shutter components have ostensibly liquidated with AD/CVD puts the CCR in completely different posture than the underlying investigations. Plaintiff's requested relief, a retroactive application of wood shutter components based on new information, Section II, *supra*, was not available through pursuit of Commerce's investigation scope determination under 28 U.S.C. § 1581(c). At minimum, that statutory mechanism is "manifestly inadequate" in that it cannot eliminate ADD/CVD on wood shutter components that entered the United States subsequent to issuance of the *AD/CVD Orders*. Complaint ¶ 2. This Court should take judicial notice of the relief sought in Plaintiff's CCR Request, Appx556-559; *Calgon*

*Carbon*, 145 F. Supp. 3d at 1327; FRCP Rule 201. Because such requested relief fundamentally differs from that which could have been pursued years earlier, Plaintiff therefore is "not expand{ing} a court's jurisdiction by creative pleading." *Norsk Hydro*, 472 F.3d at 1355.

Defendant misplaces reliance on *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018). Def. Br. at 7-9. The CAFC in *Sunpreme* found that this Court lacks jurisdiction under 28 U.S.C. § 1581(i) to challenge the U.S. Customs and Border Protection ("CBP") finding that entries of solar cells from China were subject to AD/CVD when it could have requested a scope ruling from Commerce appealable under 28 U.S.C. § 1581(c). *Sunpreme*, 892 F.3d at 1191-93. Sunpreme sought "the very relief" before CBP as it could from Commerce, *i.e.*, "a decision that its products are not subject to the scope of the orders" in the first instance. *Id*. at 1193. Like Sunpreme, Lanzhou in 2020 sought to exclude wood shutter components from the scope in the first instance. Sunpreme in fact subsequently requested a scope ruling from Commerce, which found the solar cells subject and was affirmed in litigation under 28 U.S.C. § 1581(c). *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308-15 (Fed. Cir. 2020). By contrast, Plaintiff in 2024 – based on new information, Section II, *infra* – sought to retroactively eliminate AD/CVD on wood shutter components that Commerce had already found were in scope. Had Sunpreme, based on new information, requested a CCR to exclude its solar cells that Commerce declined to initiate, this Court would possess jurisdiction over that appeal under 28 U.S.C. § 1581(i).

**"Prevailing on a motion to dismiss based on a jurisdictional dispute presents a high bar**." *Inspired Venture*, 2024 WL 4616192, *3 (emphasis added). Defendant cannot satisfy this high bar given the fundamentally dissimilar relief requested by Plaintiff through a CCR versus that which could have been pursued in the underlying investigations. Plaintiff accordingly "has

satisfied the liberal pleading requirements of CIT Rule 8(a)(1), and a motion to dismiss is improper." *Goodluck*, 605 F. Supp. 3d at 1346 n.2. Moreover, Defendant improperly advances the unyielding position that this Court is devoid of jurisdiction over its July 2024 CCR Request because Plaintiff did not participate in proceedings conducted years earlier, when Defendant has not demonstrated Plaintiff had the ability to participate, and did not then provide information Commerce specifically requested that a different party, Lanzhou, provide within one week – between June 11 and 18, 2020. Def. Br. at 9; Appx193. This position is legally flawed because Plaintiff's CCR Request contained extensive new information constituting a changed circumstance, as set forth below.

## II. Plaintiff's CCR Request Contained Extensive New Information Constituting A Changed Circumstance

The gravamen of Defendant's attempt to divest this Court of jurisdiction is that Plaintiff "is simply attempting to submit argumentation and evidence it could have, but did not provide, during the investigations and calling that information 'changed circumstances'." Def. Br. at 10. This claim does not withstand scrutiny. As an initial matter, Commerce itself has recognized that information not presented in the underlying proceeding can and does constitute a changed circumstance. Section III, *infra*. Moreover, the standard for what constitutes a changed circumstance is not as demanding as Defendant submits; the words "change" and "circumstance" are defined in relevant parts as "to become different" and "a condition, fact, or event," respectively. MERRIAM-WEBSTER.COM. Thus, the question for this Court is whether Plaintiff's 2024 CCR Request presented a "different . . . condition, fact, or event" than existed during the 2020-21 investigations. *Id.* Examination of Plaintiff's CCR Request confirms that this low threshold has clearly been satisfied. Indeed, the mere fact that the information requested of Lanzhou was not provided in the investigations but was in the CCR Request constitutes a

9

"different . . . condition, fact, or event." *Id*.

Plaintiff's July 2024 CCR Request provided Commerce with the information specifically requested of Lanzhou during the investigations using an extensive amount of new information, and further included additional bases for Commerce to grant the scope exclusion. Commerce in June 2020 gave Lanzhou a single week to "provide a detailed description as to how window shutter components can be differentiated from in-scope mouldings and millwork products. Such information should include, but need not be limited to: definitions of terms, standards or labeling conventions, dimensions, and detailed descriptions of all physical characteristics." Appx193. Plaintiff provided responsive information, Appx529-554. Yet rather than provide stale information, Plaintiff provided Commerce with a plethora of fresh data prepared contemporaneously with the July 2024 CCR Request including: a robust set of schematics showing, Appx537-41; Pl.Appx.11-12, 29-32, and 16 videos depicting, Pl.Appx12, wood shutter component production, and images of the final product, Pl.App49-52 – as contrasted with diagrams of domestic wood moulding and millwork production. Pl.Appx34-47. Plaintiff provided its own wood shutter component schematics including those rendered in November 2021, following issuance of the *AD/CVD Orders*. Appx117-19.

Indeed, Plaintiff's CCR relied heavily on the declaration of an industry expert executed in May 2024. Appx535-54; Pl.Appx20-23. Other information used in Plaintiff's CCR Request that had only become available after the *AD/CVD Orders* issued in February 2021 include the following articles published between 2022 and 2024:

- A March 2022 article entitled *A Guide To Architectural Millwork* published in AWI QUALITY CERTIFICATION PROGRAM (Mar. 7, 2022), establishing that: "Mouldings and millwork products are not necessarily required to meet the same stringent quality and finish standards" as wood shutter components. App551; Pl.Appx296-300;

- An August 2022 article entitled *What is Saw Kerf and Why It Matters in Woodworking* published in THE HANDYMAN'S DAUGHTER, establishing that wood mouldings create "severe kerf waste," by contrast with wood shutter components that do not. Appx554; Pl. Appx323-43;

- An August 2023 article entitled *Why basswood is the best for your shutters* published in THE BLINDMAN.COM, establishing that basswood – "the preferred species for crafting shutters" – has "low moisture content." Appx530; Pl.Appx126-28;

- A February 2023 article entitled *Introducing Polyurethane Paints* published in PRO MAIN, establishing that polyurethane – a type of coating used in wood shutter components – will "seal and protect the wood against UV damage, as well as ensure a smoother and fine-furniture like quality finish." Appx547-48; Pl.Appx269-72;

- An April 2023 article entitled "*Parts of a Door: Front Door Anatomy*" published in Pella, establishing that wood mouldings and millwork products require thickness and strength due to physical demands, Pl.Appx182-88, in contrast with wood shutter components "that need to be lightweight yet rigid to function smoothly." Appx535;

- A March 2024 article entitled *Water-Based vs. Oil-Based Polyurethane Comparison Guide* published in THESPRUCE, establishing that polyurethane – a coating frequently used in wood shutter components that distinguishes it from wood mouldings and millwork products – "is a clear, thin liquid coating that protects wood." Pl.Appx256-64; and

- A February 2022 article entitled *What Are Stiles on a Shutter?* published in THESHUTTERSTORE.COM, establishing that: "Stiles are the left and right vertical rails that hold the louvers in place and connect to the solid top and bottom rails to comprise the shutter panel." Appx530; Pl.Appx147-52.

These articles did not publish until after issuance of the *AD/CVD Orders*, and could therefore not have been provided to Commerce during the underlying investigations.

Beyond providing information that would have been responsive to Commerce's June 2020 request of Lanzhou, Plaintiff's 2024 CCR Request "further demonstrated that the requested exclusion was readily administrable, not susceptible to circumvention and would not harm Petitioners." Complaint ¶ 10. Commerce itself and reviewing courts have long recognized Commerce's obligation to define an administrable scope. *Antidumping Duties*, 54 Fed. Reg.

12,742, 12,746 (Mar. 28, 1989); *See Tak Fat Trading Co. v. United States*, 24 CIT 1376, 1378 (2000); *Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1378-86 (Fed. Cir. 2005). Plaintiff accordingly, in advocating for a scope exclusion, detailed how it would be administrable – including the requirement for a Lacey Act Declaration. Appx556-57; Pl.Appx25-27. In response to Petitioner's March 2020 claim that wood shutter components were being domestically produced, Appx229-30, Plaintiff in July 2024 provided updated information concerning the current lack of such domestic production. Appx555. Additionally, Plaintiff submitted a Congressional letter of support for the wood shutter exclusion dated July 3, 2024. Pl.Appx18.

The foregoing plethora of information beyond that which was requested of Lanzhou in June 2020, as well an extensive amount of information that only became available in the years following the February 2021 issuance of the *AD/CVD Orders*, constitutes a changed circumstance. As compared with the wood shutter component scope issue considered by Commerce in the underlying investigations, there existed a "different . . . a condition, fact, or event" with respect to Plaintiff's 2024 CCR Request. MERRIAM-WEBSTER.COM. This Court should take judicial notice of this information provided in Plaintiff's CCR Request, Appx521-562; Pl.Appx11-343; *Calgon Carbon*, 145 F. Supp. 3d at 1327; FRCP Rule 201. Plaintiff accordingly "has satisfied the liberal pleading requirements of CIT Rule 8(a)(1), and a motion to dismiss is improper." *Goodluck*, 605 F. Supp. 3d at 1346 n.2. Moreover, this Court should not conflate the ultimate substantive question of whether Plaintiff established sufficient changed circumstances to warrant a retroactive scope exclusion for wood shutter components from the *AD/CVD Orders* with the modest threshold of whether this Court had jurisdiction over Commerce's unwillingness to initiate the requested CCR – which Plaintiff submits has been readily surpassed based on examination of its Complaint and CCR Request.

III.  **Commerce Uses CCRs to Consider "New" Information That Was Not Provided During The Underlying Proceeding**

A critical flaw with Defendant's attempt to divest this Court of jurisdiction because the CCR Request contained information that Plaintiff "could have, but did not provide, during the investigations" is that Commerce itself uses CCRs to consider information that parties "could have, but did not provide, during the" underlying proceeding. Def. Br. at 10. As an example, Commerce in its 2021 circumvention inquiry found that oil country tubular goods ("OCTG") from Brunei and the Philippines were circumventing the ADD/CVD orders on OCTG from China. *OCTG from China: Final Affirmative Determinations of Circumvention*, 86 Fed. Reg. 67,443 (Nov. 26, 2021). Despite finding that "OCTG assembled or completed in Brunei or the Philippines using non-Chinese inputs is not subject to these circumvention inquiries," Commerce found the HLD companies to be circumventing because those "mandatory respondents are unable to track welded OCTG to the country of origin of inputs used in the production of welded OCTG." *Id*. at 67,444. "On December 23, 2021, the HLD companies submitted {CCR} requests, in which they claimed that they are able to identify and segregate welded OCTG made using non-Chinese hot-rolled steel." *OCTG from China: Final Results of AD/CVD CCRs*, 87 Fed. Reg. 15,915, 15,915 (Mar. 21, 2022) ("*OCTG Final CCR*").

Commerce did not fault the HLD companies for "simply attempting to submit argumentation and evidence it could have, but did not provide, during the {circumvention inquiry} and calling that information "'changed circumstances.'" Def. Br. at 10. Just like Lanzhou was requested to provide wood shutter component information in the underlying investigations but did not do so, the HLD companies were requested to demonstrate their ability to segregate Chinese inputs in the underlying inquiry but did not do so. Yet Commerce readily initiated the CCR and after reviewing information found that "the HLD companies and their

exporters and importers will be eligible to certify that welded OCTG . . . were produced using non-Chinese hot-rolled steel. OCTG entering the United States with such certification . . . will not be subject to" AD/CVD. *OCTG Final CCR*, 87 Fed. Reg. at 15,916.

Commerce's treatment of the HLD companies reveals that information requested but not provided in the underlying proceeding is in fact properly presented as a changed circumstance. Such Commerce precedent contradicts Defendant's draconian position that a CCR "is improper" merely because the information presented "could have" been presented in the underlying proceeding. Def. Br. at 10. The fallacy of Defendant's jurisdictional argument becomes clear by considering if Commerce had declined to initiate the CCR requested by the HLD companies. In that instance, using Defendant's logic, the HLD companies would not be able to appeal as this Court would be deprived of jurisdiction – merely because the HLD companies were attempting to submit information that could have been submitted in the underlying circumvention inquiry. Commerce would be immune from judicial review and the HLD companies would never be able to have Commerce revisit the initially adverse circumvention finding. Yet despite Defendant's position, this Court should be able to review such an unwillingness to initiate because a changed circumstance was presented. As the OCTG from China precedent confirms, a purpose of the CCR mechanism is for Commerce to reconsider prior determinations based on information that was not presented in the underlying proceedings.

Commerce routinely uses CCRs to write new scope exclusions into existing AD/CVD orders requested by importers, as Plaintiff was attempting to accomplish with its CCR Request. As an example, Commerce last year received a CCR request from Lutron Electronics Co. ("Lutron") to exclude its solar panels from the AD/CVD orders on solar cells from China. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from China:*

*Notice of Initiation of CCRs, and Consideration of Revocation of the AD/CVD Orders, in Part*,
89 Fed. Reg. 84,114 (Oct. 21, 2024).[5] Commerce readily initiated the CCR, and did not fault
Lutron for failing to have requested this an exclusion during the underlying investigations as
Defendant does for Plaintiff's request to exclude wood shutter components. *Id*. Defendant in
blaming Plaintiff emphasizes that the AD/CVD investigations set an early scope comment
period. Def. Br. at 2. Yet because all AD/CVD investigations have such an early comment
period, Defendant's logic would make CCRs unavailable to consider scope exclusions not
initially raised. This position contradicts Commerce practice – demonstrated by the Lutron CCR
– that often initiates CCRs to consider scope exclusions based on an information subsequently
providing a basis to exclude products from the scope of existing AD/CVD orders. Moreover,
under Defendant's position Commerce could perpetually decline to initiate such CCRs and
thwart judicial review of such agency actions. This Court should not sanction Defendant's
constrained view of CCRs that would put Commerce above the law.

Any effort to distinguish CCRs such as Lutron based on the lack of petitioner opposition
would improperly empower petitioners to divest this Court of jurisdiction over Commerce's
CCR actions, as they would control whether scope exclusion CCRs are initiated. Allowing
petitioners to preclude this Court from hearing appeals would contradict the CAFC recognition
that "**Congress granted the CIT broad residual jurisdiction**" through "a Congressional fail-
safe device." *Almond Bros.*, 651 F.3d at 1351 (emphasis added); *Norcal/Crosetti*, 963 F.2d at

---

[5]    Other recent instances of Commerce initiating a CCR to add a scope exclusion under
these same AD/CVD Orders include: *Crystalline Silicon Photovoltaic Cells, Whether or Not
Assembled Into Modules, from China: Notice of Initiation of CCRs, and Consideration of
Revocation of the AD/CVD Orders, in Part*, 88 Fed. Reg. 49,448 (July 31, 2023); *Crystalline
Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from China: Notice of
Initiation of CCRs, and Consideration of Revocation of the AD/CVD Orders, in Part*, 88 Fed.
Reg. 14,131 (Mar. 7, 2023).

359. The Statement of Administrative Action Accompanying the Uruguay Round Agreements Act does not support foreclosing jurisdiction, stating in relevant part that "the Administration does not expect Commerce to entertain frivolous allegations in {CCRs}." H.R. Rep 103-316, 1994 U.S.C.C.A.N. 4040, 4213 (Dec. 8, 1994). Defendant does not claim that Plaintiff raised a frivolous allegation, Def. Br. at 1-11, and cannot do so given the extensive amount of information in Plaintiff's CCR Request. Section II, *supra*. Indeed, legislative history confirms that Congress provided such a "broad jurisdictional grant" to "**ensure that these suits will be heard on their merits**." H.R. Rep. 96-1235, 1980 U.S.C.C.A.N. 3729, 3759 (Aug. 20, 1980) (emphasis added). Plaintiff simply requests that its challenge to Commerce's unwillingness to initiate a CCR be heard on its merits.

## IV.    Should This Court Find the Complaint Deficient in Terms of Establishing Jurisdiction, Plaintiff Requests Leave to Amend

Based on the foregoing, Plaintiff submits that this Court has jurisdiction under 28 U.S.C. §1581(i). It is clear from the Complaint and/or the 2024 CCR Request – of which this Court can and should take judicial notice – that Plaintiff requested retroactive application of a scope exclusion to be written into the existing AD/CVD Orders and provided Commerce with a plethora of information beyond that which was requested of Lanzhou in June 2020, including that which only became available after the *AD/CVD Orders* issued in 2021. Plaintiff could not have obtained this relief in the underlying investigation and has properly established a changed circumstance, in accord with dictionary definitions and Commerce practice. Nevertheless, should this Court find the Complaint deficient with respect to establishing jurisdiction, Plaintiff requests leave to amend per USCIT Rule 15(a)(1)(2). The statute of limitations for 28 U.S.C. § 1581(i) appeals is two years, 28 U.S.C. § 2636(i), and Commerce declined to initiate the CCR requested on August 15, 2024. Appx563-64. Accordingly Plaintiff may initiate a new 28 U.S.C. § 1581(i)

appeal until August 14, 2026, and this Court should grant leave to amend any deficiency in the Complaint to facilitate merits consideration and avoid leaving Plaintiff without legal recourse. "The court should freely give leave when justice so requires." USCIT Rule 15(a)(1)(2).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss and instead find that Plaintiff's appeal may proceed to consideration on the merits.

Respectfully submitted,

/s/ Jordan C. Kahn
Alan R. Klestadt
Jordan C. Kahn*

GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP

599 Lexington Avenue-36th Floor
New York, NY 10022
(212) 557-4400
**
*1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

Dated: March 12, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiff's Response to Defendant's Motion to Dismiss, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2007, is 4,973 words, less than the 14,000 word limit.


<u>/s/ Jordan C. Kahn</u>

*Counsel for Plaintiff*


Dated: March 12, 2025